# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

FILED
SEP - 2 2014
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| In the Matter of the Search of )<br>Information associated with the Facebook user ID )<br>www.facebook.com/mikestlboii that is stored at )<br>premises controlled by Facebook, Inc., a company )<br>headquartered in Menlo Park, California. )<br>) | Case No. 4:14 MJ 6165 TCM |

## APPLICATION FOR A SEARCH WARRANT

I, _____Carolyn Cerone_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**Information associated with the Facebook user ID www.facebook.com/mikestlboii that is stored at premises controlled by Facebook, Inc., a company headquartered in Menlo Park, California.**

located in the __NORTHERN__ District of __CALIFORNIA__, there is now concealed

See Attached LIST.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ✓ evidence of a crime;
  ❑ contraband, fruits of crime, or other items illegally possessed;
  ❑ property designed for use, intended for use, or used in committing a crime;
  ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, U.S.C., §§ 242 | Deprivation of Civil Rights |

The application is based on these facts:

  SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

  ✓   Continued on the attached sheet.
  ❑   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

CAROLYN CERRONE, Special Agent, FBI
*Printed name and title*

**Sworn to before me and signed in my presence.**

Date: 9/2/14

*Judge's signature*

City and State: St. Louis, MO

Thomas C. Mummert, Chief U.S. Magistrate Judge
*Printed name and title*

AUSA:   CRISTIAN M. STEVENS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID **www.facebook.com/mikestlboii** THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC., A COMPANY HEADQUARTERED IN MENLO PARK, CALIFORNIA | Case No. 4:14 MJ 6165 TCM<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Carolyn Cerone, a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am an investigative or law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 19 U.S.C. § 2516. I am a Special Agent with the FBI and have been since February 2011. I am

1

currently assigned to the Public Corruption/Civil Rights Squad in the St. Louis Division of the FBI and have been assigned investigations involving color of law and other federal violations. I have received extensive training and experience in crimes associated with color of law and the violations of the federal statutes related to civil rights matters. I have also received training regarding the use of the internet and digital communications as they pertain to federal civil rights investigations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe the Facebook account in question may contain relevant information regarding the investigation of possible violations of 18 U.S.C. § 242 by Officer Darren Wilson of the Ferguson Police Department. More specifically, there is probable cause to search the information described in Attachment A for evidence as to whether a crime was committed, as described in Attachment B.

**PROBABLE CAUSE**

5. On August 8, 2014, Officer Darren Wilson shot and killed Michael Brown, an 18-year old male, in Ferguson, Missouri, within the Eastern District of Missouri. Minutes before the fatal shooting, Officer Wilson encountered Brown, and his friend Dorian Johnson, who had just come from nearby Ferguson Market, where Brown stole cigarillos and assaulted the store clerk. As a result of that, a dispatch call went out for a "stealing in progress." Officer Wilson first saw Brown and Johnson as Officer Wilson was driving westbound on Canfield Drive, and Brown and

Johnson were walking in the opposite direction, in the middle of the street. Officer Wilson told Brown and Johnson to use the sidewalk. There was an exchange between Officer Wilson and Brown that led to a physical altercation between the two of them at the window of the patrol vehicle. As a result, Officer Wilson discharged his firearm. Brown then ran from the vehicle and Officer Wilson chased after him. Brown turned back toward Officer Wilson. Ultimately, Officer Wilson fatally shot Brown.

To establish a violation of 18 U.S.C § 242, the United States must prove the following elements beyond a reasonable doubt: (1) that the defendant acted under color of law; (2) that the defendant deprived the victim of his Constitution right to be free from unreasonable force, stemming from the Fourth Amendment right to be free from unreasonable seizure; (3) that the defendant acted willfully, and (4) that the offense resulted in bodily injury. The criminal civil rights investigation is focused on whether Officer Wilson used unreasonable force and whether he did so willfully.

Several witnesses, including Officer Wilson, have described a confrontation within the driver's side window between Officer Wilson and Brown. To date, medical and physical evidence corroborate that Brown assaulted Officer Wilson through the window of his patrol vehicle before Officer Wilson fired shots. Officer Wilson's treating physician's assistant and medical records from within hours of the shooting confirm that Officer Wilson sustained contusions on his right jaw, among other injuries. The Armed Forces Medical Examiner ("AFME") noted during Brown's autopsy that Brown had abrasions on the knuckles of both hands. This evidence is consistent with Officer Wilson's statement to law enforcement that Brown punched Officer Wilson in the jaw and otherwise assaulted him.

Officer Wilson stated to federal and local law enforcement that in response to being struck, Officer Wilson retrieved his gun and told Brown to stop. According to Officer Wilson, Brown attempted to gain control of the gun by placing his hand on the gun and over Officer Wilson's hand. Officer Wilson stated that a struggle ensued over the gun, culminating in Officer Wilson's firing a shot. Crime scene technicians recovered a bullet from the driver's side door in the same location Officer Wilson described. Brown sustained a gunshot wound to his right thumb consistent with Officer Wilson's description of the struggle. Analysis of human blood found on the gun revealed a DNA mixture that is 2.1 octillion times more likely to be the DNA of Officer Wilson and Brown than Officer Wilson and any other individual. Brown is also the source of DNA found in blood on the interior driver's side door of the patrol vehicle.

Witness accounts, thus far, vary as to what happened after Brown ran from the police vehicle and Officer Wilson chased him. Several witnesses stated that Officer Wilson shot Brown in the back as he was running away. However, the autopsy conducted by both the AFME and the St. Louis County Medical Examiner belie those accounts because Brown did not sustain gunshot wounds to the back. Other witnesses stated that Brown had his hands up in surrender when he turned back toward Officer Wilson, though accounts vary as to the position of Brown's hands, i.e. whether Brown had his hands straight up, at 90 degree angles, or down by his sides. Other witnesses stated that Brown charged at or moved toward Officer Wilson, and did not have his hands up. Rather his hands were at his side, in a running position, or near his waistband. These witnesses described that Officer Wilson fired shots at Brown only as Brown moved toward Officer Wilson.

Brown is the source of DNA found in blood stains found about 20 feet past where his body came to rest, indicating that Brown turned around and came back toward Officer Wilson.

4

The St. Louis County Medical Examiner's medicolegal investigator, who documented the condition of Brown's body as it was found, documented that Brown's left arm was underneath his body and his left hand was in his waistband. This is consistent with Officer Wilson's statement that Brown put his hand in his waistband as he was approaching Officer Wilson.

To determine the reasonableness of Officer Wilson's use of force, the FBI must investigate whether Officer Wilson could have reasonably perceived Brown to be a physical threat at the time Officer Wilson used force. To further determine the viability of a potential violation of section 242, specifically regarding the unreasonable force element, the FBI must also obtain evidence regarding Brown's reputation for peacefulness or lack thereof.

The FBI conducted a public Facebook search and found a posting by Brown on August 3, 2014, just six days before the confrontation with Officer Wilson, in which Brown wrote to a friend that he would "see [him] soon." (Exhibit A) This friend had recently committed suicide. Brown's post may suggest that he was contemplating suicide or planning his own death.

The account holder, Michael Brown, is deceased, and Michael Brown's mother, Lesley McSpadden, has executed written consent to search this account (Exhibit B). Nonetheless, Facebook, Inc., has stated that it requires a search warrant to search this account.

6. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

7. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include

the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

8. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

9. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

10. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming

"events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

11. Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

12. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

13. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

14. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

15. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

16. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

17. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

18. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

19. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

20. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user

accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

21. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

22. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

23. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts

between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

24. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

25. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

26. The account holder, Michael Brown, is deceased, and Michael Brown's mother, Lesley McSpadden, has executed written consent to search this account (Exhibit B). Nonetheless, Facebook, Inc., has stated that it requires a search warrant to search this account.

27. This affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Cristian Stevens, Eastern District of Missouri and Trial Attorney Fara Gold, U.S. Department of Justice, Civil Rights Division, Criminal Section, prior to being submitted to the court. AUSA Stevens and Trial Attorney Gold informed me that in their opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

28. Based on the forgoing, I request that the Court issue the proposed search warrant.

29. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

30. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## MOTION FOR ORDER PRECLUDING FACEBOOK FROM GIVING NOTICE

31. The government requests, pursuant to 18 U.S.C. § 2705(b), that Facebook be ordered not to disclose the existence or service of the search and seizure warrant to the subscriber, customer, the news media, or any other person, except as required to disclose to the Facebook's officers, employees, or agents to the extent necessary to comply with the warrant. The basis of this motion is that providing notification of the existence of the warrant may result in the endangerment of the life or physical safety of an individual, the destruction of or tampering with evidence, intimidation of potential witnesses, and otherwise seriously jeopardize the investigation.

## REQUEST FOR SEALING

32. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not public. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Facebook user ID **www.facebook.com/mikestlboii** that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes relevant evidence in the investigation of a potential violation of 18 U.S.C. § 242 in which the account holder, Michael Brown, may be the victim, including, for the user ID identified on Attachment A, information pertaining to the following matters: Photographs, comments, and postings depicting violent or aggressive behavior; and photographs, comments, and postings about death or suicide.



FD-26 (Rev 7-20-94)

## DEPARTMENT OF JUSTICE

## FEDERAL BUREAU OF INVESTIGATION

**CONSENT TO SEARCH**

1. I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of:

(Describe the person(s), place(s), or thing(s) to be searched.)

Facebook account of Michael Brown (Deceased 8/9/2014)

Big'mike Jr Brown

re: Facebook preservation request case #435854

2. I have been advised of my right to refuse consent.

3. I give this permission voluntarily.

4. I authorize these agents to take any items which they determine may be related to their investigation.

8/15/2014
Date

Lesley McSpadden
Signature — Mother, Next of Kin

Witness

Daryl D. Parks

EXHIBIT B